IN THE MATTER OF THE PETITION OF HENRY P. McGOWN AND OTHERS TO VACATE AN ASSESSMENT.

*Assessment for a sewer — when not vacated because of its having been laid in private property.*

On an application to vacate an assessment for laying a sewer, it appeared that the land in which it was built had been opened and graded by some of the adjoining owners; that the city had constructed a dock at the foot of it, and that it had been actually used as a street by all persons desiring so to do; that the petitioners saw or heard of the sewer while it was being constructed, and made no objection to it. After the assessment for the work had been completed, the street was regularly and completely opened by legal proceedings. Subsequently, an application was made to vacate the assessment on the ground that no assessment could be laid for constructing a sewer through private property. *Held,* that the application was properly denied.

APPEAL by the petitioners from an order, denying a motion to vacate an assessment laid for the construction of a sewer in One Hundred and Tenth street, between First avenue and the Harlem river.

*Irving Ward,* for the appellants, the petitioners.

*H. L. Cole,* for the respondent, the city of New York.

DANIELS, J. :

It is urged that this application should have been permitted to succeed, because the street in which the sewer was laid had not at that time been formally opened and acquired by the city

authorities. And the case of *Rhinelander* (68 N. Y., 105) is relied upon as sustaining that position. But the facts appearing on the hearing of the present application differ very materially from those which were considered as controlling in the decision of that case. It was shown in the course of the examination of the petitioners themselves, who owned the property at the time when the sewer was constructed, that the land in which it was built had been opened as a street. That it had been graded by the Harlem Gas Light Company, which owned a block of land on the north side, and by Henry P. McGown, one of the petitioners, who owned an undivided interest in the land intended to be relieved from the assessment, and who had actual charge of the entire property. That the city had constructed a dock at the foot of the street, and that it had been actually used as a street by any persons desiring to pass over it as such. The petitioner Zabriskie stated that he presumed it was a street, and Wakeman, another petitioner, testified in unqualified terms that it was a street. And all of the petitioners who were sworn stated that they either saw, or heard of the work in question being in progress, and never made the slightest objection to its performance, except that Wakeman on one occasion did say to one of the men at work upon it, that he thought it to be unlawful. With this exception there was an apparent and complete acquiescence in what the city was doing for the performance of this work. There was nothing shown which in any way tended to impugn the good faith of the city authorities. But on the other hand it was made to appear that the records had been examined, and the conclusion reached that the owners of the adjacent lands designed to and had devoted this portion of the property to the uses and purposes of a public street. And it was improved by the city to render it proper and convenient for that use, and to benefit the property bounded upon it. This must have been understood by the owners when they saw the work in progress, and after silently acquiescing in its performance and permitting their property to be benefited by it, there would be neither justice nor equity in allowing them to shift the expense upon the general property of the city, instead of paying for it themselves as a benefit conferred upon that owned by them. That they should not be allowed to do that, under these circumstances,

seems to have the sanction of what was held in the case of Ingraham, both in this court and by the Court of Appeals (4 Hun, 495). In that case it was said by Brady, J.: "That it is not necessary that there should be a formal act of acceptance or adoption of the street by the public authorities. It may be done by acts *in pais*. A common user under circumstances showing a clear intent to accept and enjoy it as such is sufficient." (Id., 498.) And the entry by the city upon the land, with the silent acquiescence of the adjacent owners, for the purpose of improving the portion designed for the street, to render it useful to them as well as the public, as the work of constructing a sewer plainly was, would clearly be an act of that nature. In the case of Ingraham (64 N. Y., 310), it was stated that "a permission from the owner or owners would be sufficient authority" to construct a sewer, "and as it is not shown that no such permission was given, and as it does not appear that these owners object, the legal presumption is that the city authorities were acting under a proper license, and had ample power to perform the work. (Id., 313.) An effort was made to show, and several of the petitioners stated, that they gave no permission to do this work. But according to this authority, that of itself was not sufficient, as long as no dissent was expressed, and while when they saw and knew of the work, they wholly omitted to object to it. That warranted the inference of assent, and should preclude them now from asserting the contrary, after the work has been entirely completed.

This sewer was constructed under a contract dated on the 16th of May, 1871. The assessment for the expenses of it was confirmed on the 13th of July, 1875. And the street was completely and regularly opened by legal proceedings instituted, carried on and confirmed for that purpose the 13th of July, 1876. After that and on the 11th of April, 1877, the petition which was the foundation of these proceedings was verified. Before that time the land in which the sewer was constructed was lawfully established as a public street. And in that, as well as the other respects, this case materially differs from that of Rhinelander. For, by these proceedings, the full legal advantages of the work, forming the subject of the present complaint have been permanently secured to these petitioners. Assuming that when it was

constructed, it was irregularly authorized, yet as its performance had the silent acquiescence of the petitioners, and the benefits of the sewer have been fully secured to them by the subsequent establishment of the premises in which it was laid as a street, they evidently could not have been materially injured by the irregularity. At least as much as that, is required to justify an order vacating an assessment for the expenses of an improvement of this description. The statute for that purpose has required that either fraud or substantial error shall first be shown. (Laws 1874, chap. 312, § 1.) And an error that has not and cannot work any substantial injury cannot properly be included within this description. The order denying the application seems to be sufficiently sustained, and it should be affirmed, with costs.

BRADY, P. J., and INGALLS, J., concurred.

Order affirmed, with costs.